1  RICHARD M. BARNETT
   A Professional Law Corporation
2  California Bar Number 65132
   105 West F Street, 4th Floor
3  San Diego, CA 92101
   Telephone: (619) 231-1182
4  Email: rmb-atty@pacbell.net

5  Attorney for Claimant Yubran Mesle

6

7              IN THE UNITED STATES DISTRICT COURT

8              SOUTHERN DISTRICT OF CALIFORNIA

9

10 UNITED STATES OF AMERICA,          )   Case No. 08-CV-0394-WQH(CAB)
                                       )
11      Plaintiff,                     )   RESPONSE AND OPPOSITION TO
                                       )   MOTION FOR JUDGMENT BY
12                                     )   DEFAULT AND TO SET ASIDE
        vs.                            )   CLERK'S DEFAULT PURSUANT TO
13                                     )   RULE 55(c) OF THE FEDERAL RULES
   SIGNED PERSONAL CHECK NO. 730       )   OF CIVIL PROCEDURE
14 OF YUBRAN S. MESLE, DRAWN           )
   FROM BANK OF AMERICA ACCOUNT        )   Date: September 2, 2008
15 NO. 09672 67676 IN THE              )
   AMOUNT OF $240,000.00 IN            )
16 U.S. CURRENCY;                      )
                                       )
17 SIGNED PERSONAL CHECK NO. 1004      )
   OF YUBRAN S. MESLE, DRAWN           )
18 FROM WELLS FARGO ACCOUNT            )
   NO. 3572585739 IN THE AMOUNT        )
19 OF $5,000.00 IN U.S. CURRENCY       )
                                       )
20 SIGNED PERSONAL CHECK NO. 1040      )
   OF YUBRAN S. MESLE, DRAWN           )
21 FROM BANK OF AMERICA ACCOUNT        )
   NO. 24547 67190, NO AMOUNT          )
22 STATED;                            )
                                       )
23 $197,031.14 IN U.S. CURRENCY        )
   SEIZED FROM BANK OF AMERICA         )
24 ACCOUNT NO. 09672 67676 ON          )
   FEBRUARY 22, 2008;                  )
25                                     )
   $1,598.21 IN U.S. CURRENCY          )
26 SEIZED FROM WELLS FARGO BANK        )
   ACCOUNT NO. 3572585739 ON           )
27 FEBRUARY 22, 2008.                  )
                                       )
28          Defendants.                )

                                    1

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.    DEFAULTS ARE DISFAVORED. THE COURT HAS DISCRETION TO SET ASIDE
      THE ENTRY OF DEFAULT FOR GOOD CAUSE UNDER RULE 55(C). . . . . . . . . . 5

      A.    Mr. Mesle qualifies for a Set Aside of the Entry of Default based on the
            three factors the Court must consider under Rule 55(c) . . . . . . . . . . . . . . 6

            i.     No culpable conduct by Mr. Mesle . . . . . . . . . . . . . . . . . . 6

            ii.    Mr. Mesle has a Meritorious defense . . . . . . . . . . . . . . . . . 8

            a.     Failure to Comply with Title 19, United States Code,
                   Section 1607 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

            b.     The seized checks were not "Monetary Instruments" subject
                   to forfeiture . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

            c.     No "Substantial Connection" between the underlying
                   violation and defendants "D" and "E" . . . . . . . . . . . . . . . 11

            d.     Mr. Mesle is an innocent owner of the defendants (D) and
                   (E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            e.     Any forfeiture of the entire res would have bben and
                   excessive fine under the Eighth Amendment . . . . . . . . . . 12

            iii.   The Plaintiff United States will not be prejudiced by a Set
                   Aside . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      B.    The Court has discretion to permit late filing of the Claim and Answer . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

1

# TABLE OF AUTHORITIES

2

3    **CASES**                                                                        **Page**

4    Alan Neuman Productions, Inc. V. Albright.,

5             862 F.2d 1388,  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

6    Benny v.Pipes,,

7             799 F.2ed 489 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

8    Cassell v. Philadelphia Maintenance Co.,

9             198 F.R.D. 67 (D. Pa. 2000)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6

10   Cripps v. Life Ins. Co. of North America,

11            980 F.2d 1261(9th Cir. 1987)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,12

12   Eitel v. McCool.,

13            782 F.2d 1470(9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

14   Lolatchy v. Arthur Murray, Inc.,

15            816 F.2d 91 (4th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

16   Mendoza v. Wight Vineyard Management,

17            783 F.2d 941(9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18   Rasmussen v. Hutton,

19            68 F.R.D. 231 (N.D. GA 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

20   Siemens Med. Solutions USA, Inc. v.. Sequoia Techs.,

21            2006 U.S. Dist. Lexis 11267 (D. Ariz. 2006)  . . . . . . . . . . . . . . . . . . . . . . . . . . 6

22   Tolson v. Hodge. ,

23            411 F.2d 123 (4th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

24   United States v. $23,000 in U.S. Currency,

25            356 F.3d 157(1st Cir.2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

26

27

28

**TABLE OF AUTHORITIES (Con't)**

**CASES**                                                                    **Page**

United States v. $100,348.00 in U.S. Currency,

     354 F.3ed 1110 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,14

United States v. Bajakajian,

     524 U.S. 321(1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. Beres,

     183 F.3d 22(1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Moradi,

     673 F.2d 725(4th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. 2000 Toyota Celica, ,

     2005 U.S. Dist. Lexis 41623 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

United States v. 1982 Yukon Delta Houseboat,

     774 F.2d 1432(9th Cir. 1985)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**STATUTES**

18 U.S.C. § 983(a)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 983(c)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

18 U.S.C. § 983(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 983(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. § 983 (d)(2)(A)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

19 U.S.C. 1607 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,9,10

31 U.S.C. § 5316(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

31 U.S.C. § 5316(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

31 U.S.C. § 5317(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**RULES**

Rule 55(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rule 55(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,5,6

Rule 60(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

iii

1

2

<u>**TABLE OF AUTHORITIES (Con't)**</u>

3

<u>**Page**</u>

4

Rule 60(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,7

5

Supplemental Rule G(5)(a)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  RICHARD M. BARNETT
   A Professional Law Corporation
2  California Bar Number 65132
   105 West F Street, 4th Floor
3  San Diego, CA 92101
   Telephone: (619) 231-1182
4  Email: rmb-atty@pacbell.net

5  Attorney for Claimant Yubran Mesle

6

7                    IN THE UNITED STATES DISTRICT COURT

8                       SOUTHERN DISTRICT OF CALIFORNIA

9

10  UNITED STATES OF AMERICA,            )   Case No. 08-CV-0394-WQH(CAB)
                                         )
11        Plaintiff,                     )   RESPONSE AND OPPOSITION TO
                                         )   MOTION FOR JUDGMENT BY
12                                       )   DEFAULT AND TO SET ASIDE
          vs.                            )   CLERK'S DEFAULT PURSUANT TO
13                                       )   RULE 55(c) OF THE FEDERAL RULES
    SIGNED PERSONAL CHECK NO. 730        )   OF CIVIL PROCEDURE
14  OF YUBRAN S. MESLE, DRAWN            )
    FROM BANK OF AMERICA ACCOUNT         )
15  NO. 09672 67676 IN THE               )
    AMOUNT OF $240,000.00 IN             )
16  U.S. CURRENCY;                       )
                                         )
17  SIGNED PERSONAL CHECK NO. 1004       )
    OF YUBRAN S. MESLE, DRAWN            )
18  FROM WELLS FARGO ACCOUNT             )
    NO. 3572585739 IN THE AMOUNT         )
19  OF $5,000.00 IN U.S. CURRENCY        )
                                         )
20  SIGNED PERSONAL CHECK NO. 1040       )
    OF YUBRAN S. MESLE, DRAWN            )
21  FROM BANK OF AMERICA ACCOUNT         )
    NO. 24547 67190, NO AMOUNT           )
22  STATED;                              )
                                         )
23  $197,031.14 IN U.S. CURRENCY         )
    SEIZED FROM BANK OF AMERICA          )
24  ACCOUNT NO. 09672 67676 ON           )
    FEBRUARY 22, 2008;                   )
25                                       )
    $1,598.21 IN U.S. CURRENCY           )
26  SEIZED FROM WELLS FARGO BANK         )
    ACCOUNT NO. 3572585739 ON            )
27  FEBRUARY 22, 2008.                   )
                                         )
28        Defendants.                    )
                                         )

                                  1

Yubran Mesle, the claimant in the above-captioned matter, by and through counsel, Richard M. Barnett, hereby files his Response and Opposition to the government's Motion for Judgment by Default and his Motion to Set Aside Clerk's Default entered in this case. He bases this motion on Rule 55(c) of the Federal Rules of Civil Procedure.

## I

## STATEMENT OF THE FACTS

Claimant Yubran Mesle is the owner of the funds in the seized bank accounts (Defendants "D" and "E" in the Complaint for Forfeiture).

On November 8, 2007, Claimant's brother, Ata Dighlawi, entered the United States at the San Ysidro Port of Entry. In Mr. Dighlawi's vehicle were three checks written on bank accounts Claimant maintained in the United States. Customs agents seized the three checks at that time.

The first check was in the amount of $240,000, written on Bank of America account number 09672 67676. The check was dated November 28, 2007. At the time the agents seized the check, this account had approximately $197,031.14 in it. The second check was in the amount of $5,000, written on Wells Fargo Bank account number 3572585739 and was dated November 10, 2007. At the time agents seized the check, the account had approximately $1,598.21 in it. The third check was written on Bank of America account number 24547 67190 and was blank in its entirety except for the signature line.

On November 9, 2007, Claimant learned from his brother the checks had been seized at the border. The following Monday, November 12, 2007, Claimant discovered that the funds in his bank accounts had been frozen as a result of the seizure.

On or about November 13, 2007, Claimant contacted a United States Customs agent he knew, Chris Cummings. Claimant informed agent Cummings of the situation regarding the seizure of the checks, and Agent Cummings told Claimant he would look into the matter. Agent Cummings explained he would contact the United States Customs agent responsible for the investigation and help to resolve the situation.

On or about November 14 or 15, 2007, Claimant spoke with United States Customs

2

1    Agent Glenn McDonald, the agent assigned to the investigation.  Mesle explained to him the

2    funds in  Bank of America account number 09672 67676 had just been wired into Mesle's

3    account on November 7, 2007, and provided a copy of a promissory note showing the source of

4    the funds. (A copy of that promissory note is attached hereof as Exhibit "_____"). Agent

5    McDonald told Mesle U.S. Customs would send him petition paperwork, for Mesle to fill the

6    paperwork out, and Agent McDonald stated that the matter would be taken care of.

7         On or about November 15, 2007, Mesle received a Notice of Seizure from United States

8    Customs and Border Protection (See Exhibit "B" attached hereto).  That notice advised him of

9    the seizure of "3 bearer negotiable personal checks (Bank of America checks #1040 and 730 and

10   Wells Fargo Check #1004)."  The notice explained that among various options other than

11   "abandoning" the property, Mesle could petition Customs explaining why he was entitled to

12   relief from forfeiture and/or elect to file a Claim and have the matter proceed to court.

13        Not being clear on exactly what papers were required to be returned from those sent by

14   U.S. Customs, Melse filed the Petition, Seized Asset Claim Form, and a currency transaction

15   report that had been enclosed in the packet of information.  (See Exhibits " ", " ", and " ").

16   He also signed an Election of Proceedings form which had been sent in the package..

17        He forwarded all of the above-referenced documentation to United States Customs on

18   December 6, 2007, or within approximately 21 days of his receipt of the Notice of Seizure from

19   United States Customs.  Mesle was told by a number of people that the petition process could

20   taker up to one year to conclude.

21        About one month after the seizure, Claimant again spoke to United States Customs agent

22   Chris Cummings about the situation.  Agent Cummings told Mesle he had spoken to Agent

23   McDonald and had made a recommendation on Mesle's behalf, and that he would continue to

24   speak to Agent McDonald and try to help.

25        Under federal law, the government must file a Complaint for Forfeiture within ninety

26   days of receipt of a Claim. Title 18, United States Code, Section 983(a)(3)(A).  U.S. Customs

27   received Mesle's Claim on December 7, 2007 (see Exhibit "F"); therefore the Complaint was

28   required to be filed no later than March 7, 2008.  Up until this point, the funds in the bank

3

1    accounts (defendants "D" and "E") had not been seized.  Apparently recognizing this significant

2    deficiency, the government sought and obtained seizure warrants for the funds on February 21,

3    2008. (See Exhibits "G" and "H" attached hereto.).  Following the seizure of the funds in the

4    bank account, and to this date, no Notices of Seizure pursuant to 19 U.S.C. 1607 were ever sent

5    to claimant Mesle for the seized funds.

6           On March 3 , 2008, the government filed the Complaint for Forfeiture, seeking forfeiture

7    not only of the three seized 'monetary instruments', but also for the funds in the two bank

8    accounts that had been seized days earlier but for which seizure Mesle had received no notice.

9           Shortly thereafter, Mesle received the Complaint for Forfeiture in this matter.  Because

10   he was told the decision on his petition would take up to a year (and because he had received no

11   notice of seizure advising him the funds in the account had been seized), he didn't understand

12   that any further action was required in on his part insofar as responding to the forfeiture

13   complaint. (See Exhibit "F" attached hereto, at paragraph 10.)

14          On June 9, 2008, a Clerk's Entry of Default was entered after no Claims had been

15   received.  Claimant was not informed of the Entry of Default by any entity including the

16   government.

17          The first Claimant realized there was a problem was when he received the instant

18   Motion for Judgment by Default, when the Government served him with a copy.  Claimant

19   promptly contacted his present counsel and engaged him to represent him in this matter.

20          On August 7, 2008, Claimant filed his Claim Opposing Forfeiture.  Thereafter, his

21   counsel attempted to resolve the matter of the pending motion for default with the government

22   informally, but the government has refused to withdraw the motion.

23          It has always been Claimant's intention to pursue this case.  Claimant diligently

24   responded to all correspondence he received from U.S. Customs, and he was simply mistaken as

25   to the fact that the filing of his petition did not in and of itself prevent the government from

26   filing a forfeiture complaint in court.  Although Claimant arguably was negligent in not filing a

27   claim and responsive pleading upon receipt of the claim for forfeiture, this simple negligence

28   should not preclude him from having an opportunity to have the default set aside so he may

4

1  contest the forfeiture on its merits.

2  **ARGUMENT**

3  I.

4  **Defaults are Disfavored.  The Court has Discretion to Set Aside the Entry of Default for**

5  **Good Cause Under Rule 55(c).**

6  Courts are leery of resolving disputes via default.  Therefore, the general rule is that

7  "default judgments are ordinarily disfavored.  Cases should be decided upon their merits

8  whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986); accord

9  *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969)  ("any doubts about whether relief should be

10  granted should be resolved in favor of setting aside the default so that the case may be heard on

11  the merits").  Efforts should be taken to avoid default judgment, as such a judgment "should be

12  a sanction of last, not first, resort." *Cassell v. Philadelphia Maintenance Co.*, 198 F.R.D. 67, 69

13  (D. Pa. 2000).

14  The mechanism by which the Court determines whether to permit a party to avoid

15  default and litigate the merits of the case is Federal Rule of Civil Procedure 55(c).  The Rule

16  states that "for good cause shown the court may set aside an entry of default, and if a judgment

17  of default has been entered, may likewise set it aside in accordance with Rule 60(b)."  In this

18  case, there has been only an entry of default but not a judgment.  That is significant because the

19  standard is "more lenient" than in cases involving a party seeking to undo a judgment of default

20  under Rule 60(b) [generally involving "mistake, inadvertence, surprise, or excusable neglect"

21  under Rule 60(b)(1)].  *United States v. $23,000 in United States Currency*, 356 F.3d 157 (1st

22  Cir. 2004).

23  Because of the preference for avoiding default judgments, the district court enjoys

24  "***discretion*** [that] is ***especially broad*** where, as here, it is entry of default that is being set aside,

25  rather than a default judgment." *Mendoza v. Wight Vineyard Management*, 783 F.2d 941, 46

26  (9th Cir. 1986) (emphasis added).  As the Fourth Circuit has articulated it, there is an "extensive

27  line of decisions" holding that Rule 55(c) "must be liberally construed in order to provide relief

28  from the onerous consequences of defaults and default judgment." *Lolatchy v. Arthur Murray*,

1  *Inc.*, 816 F.2d 91, 954 (4th Cir. 1987). In fact, a decision to set aside a default "is not an abuse

2  of discretion unless the court is clearly wrong in its determination of good cause." *Mendoza v.*

3  *Wight, supra,* 783 F.2d at 946.

4  **A.     Mr. Mesle Qualifies for a Set Aside of the Entry of Default Based on the Three**

5  **Factors The Court Must Consider Under Rule 55(c).**

6  In the cases interpreting Rule 55(c), the courts are directed to consider three factors in

7  determining whether the party seeking relief has established good cause: "(1) whether the

8  defaulting party engaged in culpable conduct which led to the default, (2) whether the defaulting

9  party has a meritorious defense, and (3) whether setting aside the default would prejudice the

10  party who obtained it." *Siemens Med. Solutions USA, Inc. V. Sequoia Techs.*, 2006 U.S. Dist.

11  LEXIS 11267 (D. Ariz. 2006) (citing *Benny v. Pipes*, 799 F.2ed 489 , 494 (9th Cir. 1986),

12  amended by, 807 F.2d 1514, and *Mendoza v. Wight, supra,* 783 F.2d at 946). While the factors

13  are disjunctive, and the Court therefore may deny a set aside motion based on a failure of proof

14  on any one factor, "where timely relief is sought from a default . . . and the movant has a

15  meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the

16  [default] so that cases may be decided on their merits." *Mendoza v. Wight, supra,* 783 F.2d at

17  946.

18  In this case, Mr. Melse can establish that all three of the factors support his motion to set

19  aside the entry of default, particularly in light of the liberal construction of the Rule required to

20  assure that litigants get their day in court.

21  **I.     No Culpable Conduct by Mr. Mesle**

22  The first factor is whether the defaulting party engaged in "culpable conduct." Culpable

23  conduct "means actions taken willfully or in bad faith. . . . More than mere negligence is

24  required." *Cassell v. Philadelphia Maintenance Co.*, 198 F.R.D. 67, 69 (D. Pa. 2000). The

25  Court may impute culpability from a defendant's "reckless disregard for repeated

26  communications" from the opposing party or the Court; however, it does not apply to merely

27  "negligent and careless behavior." *Id.*

28  As stated above, Mr. Mesle made every effort to assert his legal interest in the seized

6

1   property and to alert the government that he intended to fight against forfeiture. He contacted a

2   Customs agents he knew within three days of the seizure, spoke to the case agent within four

3   days of the seizure, and filed his paperwork with U.S. Customs within 21 days of their receipt

4   and 28 days of the seizure of the checks. As time went on, he continued to query his contact at

5   U.S. Customs, Mr. Cummings, as to what efforts would be required to have his property

6   returned to him. To the extent that he failed to follow through and file the proper claim with the

7   Court, that negligence should not be held to deny Mr. Mesle the opportunity to pursue his claim

8   with counsel (particularly since the government will not be prejudiced by a set-aside; see *infra*).

9          To grant the relief requested, the Court need not find "excusable neglect" by Mr. Mesle.

10  That standard is listed as one of the grounds for relief under the stricter Rule 60 requirement for

11  vacating a *judgment* of default. *See* Fed. Rule Civ. Pro. 60(b)(1). Rule 55(b) motions are

12  viewed more leniently. The case of is *Rasmussen v. Hutton*, 68 F.R.D. 231 (N.D. GA 1975)

13  illustrative. In granting relief, the district court wrote:

14          In short, the Court does not find impressive defendant Hutton's reasons for being

15          in default. But, when setting aside a default as opposed to vacating a default

16          judgment, it is not always necessary that the neglect or oversight be excusable. . .

17          While neither defendant has presented well justified reasons for their actions, the

18          defendants do not appear to have been in willful disregard of the processes of the

19          Court. Viewing the totality of circumstances, the default should be lifted.

20  *Id.* at 235. Similarly, the court in *Cassell v. Philadelphia Maintenance Co.*, 198 F.R.D. 67, 69

21  (D. Pa. 2000) granted the defendant's motion to set aside an entry of default even though the

22  defendant's conduct was "negligent and careless." Id. at 69 ("[D]efendant's conduct constituted

23  negligence at worst and is not attributable to any intentional or willful disregard of the court

24  rules or repeated communications from either the court or plaintiff's counsel").

25          Mr. Mesle may have been negligent but did not act in intentional, willful disregard of

26  repeated communication from the Court or the government. According to the government's

27  motion, the government sent notice twice to Mr. Mesle, i.e., the administrative Notice of Seizure

28  on November 14, 2007 and the Complaint for Forfeiture in March of 2008. Mr. Mesle promptly

1  and thoroughly responded to the Notice of Seizure, providing more than was even required at

2  that stage of the proceedings.  After it served him with the Complaint for Forfeiture, there is no

3  indication it took any further steps to forward him additional notice or determine why he hadn't

4  respoonded to the Complaint for Forfeiture, especially in light of his extensive filings in

5  response to the November 14, 2007 administrative Notice of Seizure.  It never served him with a

6  copy of the Clerk's Judgment of Default, or attempted to contact him to see why he hadn't

7  responded to the Complaint for Forfeiture.  *Cassel v.  Philadelphia Maintenance Co.*, 198

8  F.R.D. 67, 69 (D. Pa. 2000)("[D]efendant's conduct constituted  negligence at worst and is not

9  attributable to any intentional or willful disregard of the court rules or repeated communications

10  from either the court or plaintiff's counsel").

11       Here, Mr. Mesle made every effort he understood was required of him to protect his

12  rights in recovering his property.  Forfeiture defense, and the morass of administrative and

13  judicial rules and requirements are a nightmare for most lawyers, let alone a layman to navigate.

14  Mr. Mesle cannot be faulted for having done what he was told to, i.e., file his petition and wait

15  for a response.  His conduct certainly does not come close to an "intentional or willful

16  disregard" of the court rules, and thus demonstrates the absence of culpable conduct on his part.

17       ***ii.***    ***Mr. Mesle has a Meritorious Defense.***

18       A second factor for the Court's consideration of good cause is whether the litigant

19  seeking relief has a meritorious defense to the case.  In seeking to set aside a judgment under

20  this factor, "all that is necessary to establish a 'meritorious defense' is a presentation or proffer

21  of evidence, which, if believed, would permit either the Court or the jury to find for the

22  defaulting party." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).  Here, Mr. Mesle

23  has a number of meritorious defenses to the forfeiture.

24       **a.**    **Failure to Comply with Title 19, United States Code, Section 1607**

25       First, defendants (d) and (e), the $197,031.04 seized from Bank of America account

26  number 09672 67676 and $1,598.21 seized from Wells Fargo Bank account umber 3572585739

27  are not even properly before the court.  The government failed to follow the proper procedures

28  in attempting to forfeit these funds because it failed to send out administrative notices of seizure

8

1   prior to instigating judicial forfeiture proceedings.

2       Title 19, United States Code, Section 1607 provides the statutory requirements for

3   governmental forfeiture under these circumstances.   Section 1607 provides in relevant part the

4   following:

5       Section 1607. Seizure; value $500,000 or less, prohibited articles, transporting
conveyances:

6

7       (a) Notice of seizure
    If -

8              *        *        *

9       (4) such seized merchandise is any monetary instrument within
the meaning of section 5312(a)(3) of title 31;

10

11   the appropriate customs officer shall cause a notice of the seizure
of such articles and the intention to forfeit and sell or otherwise
dispose of the same according to law to be published for at least
12   three successive weeks in such manner as the Secretary of the
Treasury may direct. Written notice of seizure together with
13   information on the applicable procedures shall be sent to each
party who appears to have an interest in the seized article.

14       Here, the government seized the funds from the bank accounts on February 21, 2008 but

15   never sent the required notice to claimant Mesle.[1]  This failure by the government is particularly

16   important for the following reasons.  First, it would have notified him further action was

17   required on his part.  Second, he could have availed himself of the opportunity to seek

18   administrative relief from forfeiture of the seized funds through a petition for remission or

19   mitigation of forfeiture.  When property has even seized, a claimant may seek an administrative

20   determination of whether the forfeiture should be remitted or mitigation.  That decision is made

21   by U.S. Customs. See 19 C.F.R. §§171.11 and 171.12.  As set forth in the attached Declaration

22   of Richard M. Barnett, this avenue of relief is the preferred procedure in Title 31 cases because

23   relief is often granted, in many cases, on more favorable terms than those in judicial forfeiture

24   proceedings.  However, once a complaint for forfeiture is filed, U.S. Customs is precluded form

25   ruling on any petition filed by a claimant and the petition must be forwarded to the Department

26

27   —————————————

28       [1]    Claimants have attempted to locate a published Notice of Seizure for the funds but
do not believe any such notice was ever published as required by Section 1607.

1    of Justice.[2] Thus, by failing to properly notice Claimant of his right to file an additional petition

2    arising out of the seizure of the funds in the bank accounts, Claimant was denied his opportunity

3    to resolve the matter with U.S. Customs then and there.

4         By failing to comply with the requirements of Section 1607, the forfeiture of the funds

5    themselves is not even properly before the court.

6               **b.**     **The Seized Checks were Not "Monetary Instruments" Subject to**

7                      **Forfeiture**

8         A default judgment generally bars the defaulting party from disputing the facts alleged in

9    the complaint, but the defaulting party may argue that the facts as alleged do not state a claim.

10   *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392. Thus, well pleaded factual

11   allegations, except as to damages, are taken as true; however, necessary facts not contained in

12   the pleadings, and claims which are legally insufficient, are not established by default. *Cripps v.*

13   *Life Ins. Co. of North America*, 980 F.2d 1261, 1267 (9th Cir. 1987).

14        In its November 14, 2007 Notice of Seizure , U.S. Customs notified Mr. Mesle it had

15   seized ""3 bearer negotiable personal checks (Bank of America checks #1040 and 730 and

16   Wells Fargo Check #1004)." (See Exhibit "B"). The forfeiture statute upon which plaintiff

17   relies, Title 31, United States Code, Section 5317(c)(2), relies in turn on a violation of Title 31,

18   United States Code, Section 5316(a)(1)(B), which proscribes the failure to declare "monetary

19   instruments of more than $10,000" brought into or taken out of the United States.

20        Claimant does not dispute that the definition of "monetary instruments" includes "bearer

21   negotiable instruments". However, in this case, neither of the checks was "negotiable". In the

22   case of the check written on the Bank of America account, the check was for $240,000 while

23   there was only $197,031.14 in the account. In the case of the check written on the Wells Fargo

24   Account for $5,000, there was only $1,598.21 in the account. As set forth in the attached

25   Declaration of Richard M. Barnett (see exhibit "J"), counsel has been advised by the operations

26

27

28        [2]      "No action will be taken on any petition after the case has been referred to the
Department of Justice for institution of legal proceedings. The petition will be forwarded to the
Department of Justice." 19 C.F.R. § 171.13(a)

1  managers at each of the branches at which these account were maintained, that each of the

2  respective checks would have been considered "non-negotiable" based on non-sufficient funds.

3  Thus, the checks were not "monetary instruments" within the meaning of Title 31, Untied States

4  Code, Section 5316, and thus not subject to forfeiture.

5           **c.**     **No "Substantial Connection" Between the Underlying Violation and**

6                    **Defendants "D" and "E"**

7       The government has failed to establish any connection between the offense which is the

8  crux of the forfeiture action, i.e., failing to declare the monetary instruments, and the funds

9  themselves. In other words, the 'offense' here was the failure to declare the instruments, and

10  under the law, the instruments can be forfeited. However, it is a leap of logic to assert that the

11  funds in the bank accounts are subject to forfeiture because they were property "involved in or

12  property traceable to property involved in the November 8, 2007 violations of Title 31" as the

13  government asserts in paragraph six (6) of the Complaint for Forfeiture.

14       Title 18, United States Code, Section 983(c)(3) requires in cases in which the

15  government contends the property it seeks to forfeit was "involved" in the commission of a

16  criminal offense, that the government establish there was a "substantial connection" between the

17  property and offense. See *18 U.S.C. § 983(c)(3). See United States v. 2000 Toyota Celica*, 2005

18  U.S. Dist. LEXIS 41623 (9th Cir. 2005)( government must establish "substantial connection"

19  between property to be forfeited and underlying criminal offense--government must establish

20  that a nexus existed between the property and specified illegal activity sufficient to justify

21  forfeiture).

22       Here, there simply is no "substantial connection" between the failure of Mr. Mesle's

23  brother to report he was carrying the three checks and the funds that were in the account. In

24  other words, whether there were funds in the account of not did not make the crime of 'failing to

25  report' the checks more likely or less likely, easier of more difficult to commit. Whether there

26  were funds in the accounts was completely and totally irrelevant to whether Mr. Digwhali failed

27  to report his possession of the checks.

28       Again, a default judgment generally bars the defaulting party from disputing the facts

1     alleged in the complaint, but the defaulting party may argue that the facts as alleged do not state

2     a claim. *Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1392. Thus, well pleaded

3     factual allegations, except as to damages, are taken as true; however, necessary facts not

4     contained in the pleadings, and claims which are legally insufficient, are not established by

5     default. *Cripps v. Life Ins. Co. of North America*, 980 F.2d 1261, 1267 (9th Cir. 1987).  Here,

6     there are simply insufficient facts upon which to grant a default judgment as to defendants (d)

7     and (e), the funds in the two bank accounts.

8                   **d.     Mr. Mesle is an Innocent Owner of the Defendants (D) and (E)**

9           An innocent owner's interest in property shall not be forfeited under any civil forfeiture

10     statute.  18 U.S.C. §983(d)(1).  A claimant is an innocent owner if he or she did not know of the

11     conduct giving rise to forfeiture.  18 U.S.C. Section 983(d)(2)(A)(I).  As argued above, claimant

12     asserts there is no connection between the act of failing to report the checks at the border and the

13     funds in claimant's bank account insufficient to permit forfeiture of the funds in those accounts.

14     Should the court find otherwise, Mr. Mesle is still an innocent owner under 18 U.S.C. Section

15     983(d).  As set forth in the Declaration of Yubran Mesle (See Exhibit " I"), he had no

16     knowledge his brother even had the checks when he crossed the international border, let alone

17     that he would fail to report them.  Thus, he would prevail on his defense of innocent ownership.

18                   **e.     Any Forfeiture of the Entire Res Would Have Been An Excessive**
                            **Fine Under the Eighth Amendment**

19
       In *United States v. Bajakajian*, 524 U.S. 321, 118 S.Ct. 2028 (1998), Customs inspectors
20
       found Mr. Bajakajian and his family preparing to board an international flight carrying $357,144
21
       without filing the necessary currency report as required by 31 U.S.C. §5316(a)(1)(A), the exact
22
       same statute involved in this case. The district court imposed a forfeiture of $15,000.  In holding
23
       a forfeiture of the full $357,144 excessive, the Court relied on the fact that Bajakajian's offense
24
       was solely a reporting offense and that the district court found his violation to be unrelated to
25
       any other illegal activities.  Bajakajian did not fit into the class of persons for whom the statute
26
       was principally designed: money launderers, drug dealers, and tax evaders.  The court relied
27
       heavily on the fact that the maximum penalty under the Sentencing Guidelines was a six month
28
       sentence and a $5,000 fine, which conformed that Bajakajian had a minimal level of culpability.

                                                     12

1   The court also noted that the failure to report affected only the government and that it caused no

2   loss to the public fisc.  Had the crime gone undetected, the government would have be deprived

3   only of the information that $357, 144 had left he country.   Thus, there was "no articulable

4   correlation" between the $357,144 and any government injury. *Id.* at 340, 118 S.Ct. at 2039.

5         Bajakajian has been followed by a number of cases upholding very limited forfeitures in

6   these currency reporting violations.; *United States v. $100,348.00 in U.S. Currency*, 354 F.3ed

7   1110, 1121-24 (9th Cir. 2004)-$10,000 forfeiture upheld where $100,348 not reported);(See

8   *United States v. Beres*, 183 F.3d 22 (1st Cir. 1999) $30,000 forfeiture where $138,794 not

9   reported).

10        Here, the only information the government was deprived of by Mr. Mesle's brother

11  failing to file a currency report was that his brother (Mr. Mesle) had written him two checks

12  here in the United States on his bank account at those banks.  The holding in *Bajakajian* would

13  have severely limited any forfeiture of the res.

14        **iii.    The Plaintiff United States Will Not Be Prejudiced by a Set Aside.**

15        The third factor is whether the government would be prejudiced by an order setting aside

16  the entry of default.  The "fact that a plaintiff will have to litigate an action on the merits rather

17  than proceed by default does not constitute prejudice." *Cassell v. Philadelphia Maintenance*

18  *Co.*, 198 F.R.D. 67, 69 (D. Pa. 2000).  Prejudice only occurs if the set aside "results in the loss

19  of any relevant evidence or some other occurrence that tends to impair the plaintiff's ability to

20  pursue the claim." *Id.*

21        Here, there can be no suggestion that the government's case would suffer as a result of a

22  set-aside.  In fact, while Mr. Mesle filed his Documents with U.S. Customs within 21 days of

23  their receipt, the government waited until the 86th out of 90 days to file its complaint for

24  forfeiture.

25        **B.     The Court has Discretion to Permit Late Filing of the Claim and Answer**

26        While it is true that the time for filing a claim to the seized property expired before Mr.

27  Mesle filed his claim, the Court maintains discretion to enlarge the time for filing, since the

28  thirty day deadline is modified by the clause, "[u]nless the court for good cause sets a different

1    time." Supplemental Rule G(5)(a)(ii); *United States v. $100,348.00 in U.S. Currency*, 354 F.3d

2    1110, 1117.

3         In *United States v. $100,348.00 in United States Currency,* the Court of Appeals for the

4    Ninth Circuit held that"nothing in the Rule imposes a time limit on the exercise of the district

5    court's discretion." *Id.* At the same time, "the court's discretion is not unbounded. It should

6    only exercise its discretion to grant additional time where the goals underlying the time

7    restriction and the verification requirement are not thwarted." *Id.*, citing *United States v. 1982*

8    *Yukon Delta Houseboat*, 774 F.2d 1432, 1435-36 (9th Cir. 1985) ("*1982 Yukon*").

9         The purpose of the time limit is to "force claimants to come forward as soon as possible

10   after forfeiture proceedings have been initiated so that all interested parties can be heard and the

11   dispute resolved without delay." *1982 Yukon*, 774 F.2d at 1436.  In this case, Mr. Mesle came

12   forward immediately after the seizure of the checks and asserted his interest in the seized

13   property by filing his claims to them.

14        The Ninth Circuit has identified certain non-exclusive factors for consideration in

15   determining whether to consider an untimely claim: "(1) when the claimant became aware of the

16   currency's seizure, (2) whether the United States Attorney may have encouraged the delay, and

17   (3), the decedent's illness and death during this period which may have caused the estate's delay

18   in filing." *United States v. $100,348.00 in United States Currency*, 354 F.3d at 1117.  Other

19   circuits have listed additional factors, "not dissimilar," based on the excludable neglect

20   standard. *Id.*

21        Here, the factors supporting the setting aside of the entry of default also support

22   extending the time for filing an answer and claim.  Mr. Mesle took efforts to assert an interest in

23   the property.  He immediately filed all the papers he understood were required within twenty-

24   one (21) days of notice from the government by the notice of seizure.   The government didn't

25   even seize the actual funds until over three months after the checks were seized.

26        Mr. Mesle's claim has been filed in this case.  He urges the Court to permit him to file

27   his responsive pleading at this time so that the case may be decided on its merits.

28   / / /

14

## II.

## Conclusion

For the reasons stated above, the claimant, Yubran Mesle, urges the Court to grant his motion to set aside the clerk's entry of default and to allow the case to proceed based on his claim and anticipated responsive pleading..

Dated:  August 19, 2008

Respectfully submitted,

s/ Richard M. Barnett
RICHARD M. BARNETT
Attorney for Claimant Yubran Mesle

15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I declare that:

I am a citizen of the United States and employed in the city of San Diego, CA. I am over eighteen years of age and not a party to the action. My business address is 105 West F Street, Fourth Floor San Diego, CA 92101.

On August 19, 2008, I served the following documents:

**Response and Opposition to Motion for Judgment of Default and Motion to Set Aside Entry of Default Pursuant to Rule 55(c) of the Federal Rules of Civil Procedure**

on the below attorneys by electronic filing:

Bruce Smith United States Attorney.

I declare under penalty of perjury that the foregoing is true and correct, and that this declaration was executed on August 19, 2008 at San Diego, CA.

/s Richard Barnett
Richard Barnett